This case involves the validity of Act No. 1005, Acts of Alabama, Regular Session, 1975, Vol. III, p. 2031, a local tax whereunder the legislature directly levied an excise or privilege tax of 20 cents per ton on coal severed in Cullman County. The Act, in pertinent parts, states:
 "Section 2. . . . There is hereby levied, in addition to all other taxes imposed by law, an excise and privilege tax on every person severing coal within Cullman County. The tax shall be paid to the Commissioner by every producer who severs coal within Cullman County at the rate of 20 cents per ton of coal severed." "Section 7. The net proceeds of the tax levied pursuant to this act shall be used exclusively for the paving, of county roads in Cullman County; and on or before the tenth day of each month, the state revenue department shall pay over to the state highway department the net proceeds of the tax collected hereunder during the preceding month. Such funds shall be maintained by the state highway department in a separate account and used by such department solely for the purpose of paving, of roads in Cullman County."
Drummond Coal and Taylor Coal companies, taxpaying appellants, contend that this Act is violative of Art. 4, § 105, of the Constitution of Alabama 1901, and thus void. This section states:
 "No special, private, or local law, except a law fixing the time of holding courts, shall be enacted in any case which is provided for by a general law, or when the relief sought can be given by any court of this state; and the courts, and not the legislature, shall judge as to whether the matter of said law is provided for by a general law, and as to *Page 957 
whether the relief sought can be given by any court; nor shall the legislature indirectly enact any such special, private, or local law by the partial repeal of a general law."
It is the position of the Taxpayers that this Act contravenes or conflicts with Title 51, § 431, Code, a general law which, in pertinent parts, provides:
 "(15). There is hereby levied, in addition to all other taxes imposed by law, an excise and privilege tax on every person severing coal within Alabama. This tax shall be paid to the commissioner by every producer who severs coal within Alabama at the rate of 13.5¢ per ton of coal severed.
 "(23). No political subdivision of the state of Alabama, including counties, cities, special taxing districts, or other taxing instrumentalities shall levy a tax upon the excise or privilege of severing coal in Alabama. It is the intent hereof, that all taxing authority upon the excise or privilege of severing coal as is granted in section 431 (15) of this title shall inure to the state of Alabama exclusively."
The Taxpayers' constitutional attack is on two fronts:
 1) The local Act is constitutionally offensive in that the "political subdivision" prohibition of subsection (23) of § 431 is violated; and this for the reason that local legislation passed by the "courtesy" procedure is tantamount to passage by a political subdivision.
 2) Art. 4, § 105, of the Constitution of Alabama is violated because Act No. 1005 is local legislation which conflicts directly with a general law — Tit. 51, § 431 — and should be rendered void.
It should be noted, at the outset, that this Act was passed by the legislature and duly enrolled;[1] thus, it is not an Act passed by a political subdivision. Counsel for the Taxpayers and Amicus Curiae argue that this Act was passed by legislative courtesy and the practical effect of this alleged courtesy was that the Act was passed by a political subdivision. This we cannot accept. Even in the context of "legislative courtesy," acts which are passed by both houses, signed by the Governor (or otherwise become law under Section 125, Constitution of Alabama), and regularly enrolled do not acquire the status of legislation by a political subdivision. If otherwise valid, the application of legislative courtesy in its passage carries no taint, in itself, of invalidity.
On the other hand, we reject the State's insistence that § 105 prohibits local legislation only in cases specifically enumerated in § 104. Our cases are clear that a local law must satisfy both §§ 104 and 105. The test under § 105 is:
 ". . . [whether] the object of the local law is to accomplish an end not substantially provided for and effectuated by a general law, notwithstanding there is a general law dealing with the subject or system affected by the local law." Polytinsky v. Wilhite, 211 Ala. 94, 99 So. 843 (1924).
Thus, the remaining issue is a narrow one: Does Tit. 51, § 431 — the general coal severance taxing Act — which provides the source and the objects of expenditure of the proceeds of the tax, in operation with § 105 of the Constitution, render void local Act No. 1005, which provides the same source but different objects of expenditure of the proceeds of the tax? Ultimately, then, we must decide if the use of the proceeds from this tax for highway maintenance in Cullman County, as provided in local Act No. 1005, is substantially and materially different in the end to be accomplished from the general law which provides for use of the proceeds from the same source for retirement of State Dock bonds.
The Taxpayers contend that "it is the identity of subject matter of the two acts [Act No. 1005 and Tit. 51, § 431] which is fatal to the Cullman Severance Tax, the local act." The test as stated in this contention *Page 958 
is too narrow and the conclusion is not supported by our case law. It is not the broad, overall subject matter which is looked to in determining whether the local act, taken together with the general law, is violative of § 105; rather, it is whether the object of the local law is to accomplish an end not substantially provided for and effectuated by a general law. Indeed, the word "subject" does not appear in § 105. The exact wording is: "No special, private, or local law . . . shall be enacted in any case which is provided for by a general law. . . ."
This constitutional proscription, as stated in Standard OilCo. of Kentucky v. Limestone County, 220 Ala. 231, 124 So. 523
(1929), had been previously considered by this Court:
 "Suffice to say it is fully settled that this section does not forbid local legislation on subjects not prohibited by section 104, merely because a general law deals with the same matter. If, in the judgment of the Legislature, local needs demand additional or supplemental laws substantially different from the general law, the Legislature has power to so enact. Courts are charged with the duty to determine whether there is a substantial difference between the general and the local law, but cannot invade the legislative domain to determine whether a county should have a local law substantially different and in addition to the state law." 220 Ala. at 235, 124 So. at 526.
In Limestone, the Court was faced with a problem similar to the instant case. The Legislature in 1923 had passed a general law imposing a gallonage tax of 2 cents on motor fuels and a later act divided this money equally between the 67 counties of the State for the construction and maintenance of bridges and public roads. The Legislature, in 1927, then passed a local act authorizing the Court of County Commissioners of Limestone County to levy an additional 3-cent tax on all motor fuels in Limestone County.
The taxpayers in Limestone contended in brief:
 "It [the tax] violates section 105 of the Constitution, providing that no special, private, or local law shall be enacted in any case provided for by general law." 220 Ala. at 233, 124 So. at 526.
Mr. Justice Bouldin, speaking for the Court, responded, saying:
 "Certainly the 3-cent gallonage tax in the Limestone County Act is not the same tax levied by the general law. It is an additional tax." 220 Ala. at 236, 124 So. at 526.
We find no significant distinction between a valid local act which assesses an additional tax on gasoline and a local act which assesses an additional tax on the severance of coal.
Likewise, in In re Opinion of the Justices, 266 Ala. 363,96 So.2d 634 (1957), this Court opined that an additional automobile license tax imposed by Lauderdale County in face of a general law licensing the use of automobiles was not constitutionally proscribed. See also Steadman v. Kelly,250 Ala. 246, 34 So.2d 152 (1948).
The policy argument that Cullman County is benefiting at the expense of the rest of the State (the principal market for coal being outside Cullman County) is a compelling one. But it cannot overcome the constitutional grant of legislative power to make such policy decisions.
We are also impressed with the contention, from the standpoint of policy, that a lack of uniformity in the levying of this tax from one coal-producing county to another is undesirable in a growing and essential State industry. But, here again, this is a policy argument to be addressed to the legislature.
It must be remembered that one of the predominant themes of the Constitution of Alabama of 1901 is found in the restrictions placed on home rule. Power denied to local governments is reserved to the State Legislature; and, subject only to constitutional proscriptions, the Legislature is free to determine policy and enact local laws *Page 959 
accordingly.[2] State v. Steele, 263 Ala. 16, 81 So.2d 542
(1955).
AFFIRMED.
BLOODWORTH, MADDOX, FAULKNER, ALMON and BEATTY, JJ., concur.
TORBERT, C.J., and SHORES and EMBRY, JJ., dissent.
[1] The following note appears on p. 2033 at the conclusion of the Act: "This Act became a law under Section 125 of the Constitution on October 10, 1975 without approval by the Governor."
[2] The issue of the amount of the tax as being capricious and confiscatory is not raised.