38 So.2d 571

**STATE v. COMMERCIAL LOAN CO.**
**3 Div. 501.**

Supreme Court of Alabama.
Nov. 18, 1948.

Rehearing Denied Feb. 17, 1949.

A. A. Carmichael, Atty. Gen., and Gardner F. Goodwyn, Jr., Asst. Atty. Gen., for appellant.

Ballard & Ballard, of Montgomery, for appellee.

STAKELY, Justice.

This is an appeal from a decree of the equity court overruling the demurrer of the State of Alabama to the bill of complaint of the Commercial Loan Company. The suit came to the circuit court under § 140, Tit. 51, Code of 1940, as an appeal by the Commercial Loan Company as a taxpayer from an assessment by the Department of Revenue of taxes under the excise tax law on financial institutions. § 425 et seq., as amended, Title 51, Code of 1940.

Commercial Loan Company is a partnership composed of Grace L. Hogg and C. B. Allen, who are residents of the State of Georgia. The partnership is engaged in the business of making loans in the amount of $300.00 or less in Lanett, Chambers County, Alabama. Commercial Loan Company as taxpayer as a financial institution within the first ten days of April, 1947, filed a return with the Department of Revenue under § 425 et seq., as amended, Title 51, Code of 1940, showing a net income of $2169.58 for the calendar year 1946. The return was filed for the excise tax year 1947 but the tax is measured by 6% of the net income of the preceding year. A tentative calculation of the excise tax due for such excise tax year was shown by the return in the amount of $130.17. This is 6% of the net income of $2169.58.

On its return the taxpayer took a credit of $200.00 on the tax of $130.17. This credit, if legally taken, wiped out the entire tax liability. The taxpayer took the credit of $200.00 claiming to be entitled thereto under the provisions of § 431, Title 51, Code of 1940, the pertinent part of which is as follows:

" * * * If any other tax, whether on property (other than ad valorem taxes on real estate), income, business or any element thereof, except license taxes not in excess of those heretofore legally levied and in effect, be hereafter levied by this state or by any political subdivision of this state on any financial institution as in this chapter defined, the amount of such other tax due by such institution shall be credited on account of the tax payable pursuant to the provisions of this chapter. Provided that no other tax levied by this title shall be credited against the excise tax herein levied. * * * "

The $200.00 claimed as a credit against the tax is the amount paid as a license on September 20, 1946, by the taxpayer to the supervisor of the bureau of loans under Act No. 159 approved June 23, 1945. General Acts 1945, p. 200. The applicable sections of the act appear as §§ 263 and 264 in the Pocket Part of Code of 1940, Title 5 and are as follows:

"Sec. 263. License required for business of making small loans.—No person, copartnership, or corporation shall engage in the business of making loans of money or things in action in the amount of three hundred dollars ($300.00) or less, until a license has been issued hereunder for each separate place of business so conducted. Loans in excess of three hundred dollars ($300.00) shall not be governed by this chapter. (1945, p. 200, § 1, effective Oct. 1, 1945.)

"Sec. 264. Application for license; fee; distribution of proceeds.—Applications for such license shall be in writing and shall contain the full name and address, both of the residence and place of business, of the applicant, and if the applicant is a co-partnership, of every member thereof, or if a corporation, of each officer thereof; also the county and municipality, with a street and number, if any, where the business is to be conducted. Every such applicant shall pay an annual license of two hundred dollars ($200.00), which said amount shall be paid to the supervisor of the bureau of loans, who shall remit the same to the treasurer of the state of Alabama as provided by law, to be used for the purpose of defraying the expenses of the administration of the bureau of loans as provided in this chapter. The license herein provided for shall be in addition to all other licenses now or hereafter provided for by law. All applications shall be filed with the supervisor of the bureau of loans hereinafter created. (1945, p. 200, § 2, effective Oct. 1, 1945.)"

The calculation of the tax by the Department of Revenue was made by disallowing the $200.00 claimed as a credit on the tax but allowing the $200.00 as an expense and a deduction from income. This would mean that $200.00 taken from $2169.58 would leave $1969.58 as the net income for 1946. Six percent was then taken of the net income of $1969.58 resulting in $118.17 as the amount of the tax assessed.

Notice was given to the taxpayer that the amount of taxes due was different from the amount shown by the return and that a hearing would be held on May 13, 1947 to consider any objection to the assessment of $118.17. This assessment was made final on May 28, 1947 in the amount of $118.17 with interest to start running on the tax thirty days after May 28, 1947. Upon notice of the final assessment the taxpayer appealed to the Circuit Court of Montgomery County, in Equity, and filed its bill of complaint in the Circuit Court of Montgomery County, in Equity, setting up the facts and praying that the court decree that the said amount of $200.00 is a proper credit on the excise tax, that no excise tax is due from the taxpayer and that the assessment be set aside. The state demurred to the bill of complaint. The court overruled the demurrer. Hence this appeal as aforesaid.

The question to be decided in this case is whether it was proper to deduct the $200.00, referred to above, from the amount otherwise payable as an excise tax. This

amount was paid under a levy first made effective in 1945 and therefore in excess of taxes levied under the act, enacted previously in point of time, which appears as §§ 425–431, inclusive, Title 51, Code of 1940.

Appellant argues with such force and with considerable authority that the $200.00 is a levy under the police power for regulatory purposes. It is therefore claimed that it is not a tax within the meaning of § 431, Title 51, Code of 1940. It is argued that it cannot constitute a credit since it is not a tax. Various sections of the act are cited as showing that the levy is for regulatory purposes and not for revenue. It is pointed out a levy for regulation is a charge or fee and not a tax. On the contrary appellee contends that it is immaterial whether the levy is under the police power for regulatory purposes or for revenue since in either event the expression "other tax" as used in § 431 includes within its meaning levies for either purpose if they are "in excess of those heretofore legally levied".

Upon a careful consideration we think the position of the appellee should prevail. If the legislature had wished, it could have clearly provided that the "other tax" contemplated by § 431 was a levy for revenue purposes only, but it did not do this and while we may interpret the act, we cannot amend it.

In the case of City Council of Montgomery v. Kelly, 142 Ala. 552, 38 So. 67, 68, 70 L.R.A. 209, 110 Am.St.Rep. 43, this court said:

"A license tax is 'either a license strictly so called imposed in the exercise of the ordinary police power of the state, or it is a tax, laid in the exercise of the power of taxation.' * * *

" * * * And the courts now recognize the right to so combine the police regulation and the taxing power as to levy a license tax to discourage and even break up a business."

In the case of Alabama Power Co. v. City of Carbon Hill, 234 Ala. 489, 175 So. 289, 292, this court said:

"When a city fixes the amount of a license charge for business conducted within its limits, it may include in a single sum an amount for revenue and an additional sum for police regulation. When the charge is made upon some useful occupation, business, or profession beneficial to the community, it is ordinarily said to be a revenue measure. 'But where a money payment is enacted for the privilege of pursuing occupations, looked upon as more or less injurious to society or which require careful police supervision (as the liquor traffic, theaters, dance houses, certain kinds of amusements, as circuses and the like) or trades which may become detrimental to health or become public nuisances (as slaughter houses, bone and rendering factories, garbage reduction plants, stone quarries, dairies and cow stables, laundries, wash houses, and dyeing establishments) this is usually designated a license tax levied by virtue of the police power.' * * * *"

See also Alabama Gas Co. v. City of Montgomery, 249 Ala. 257, 30 So.2d 651; Title Guarantee Loan & Trust Co. v. State, 228 Ala. 636, 155 So. 305.

The foregoing Alabama authorities demonstrate that the word tax, unless expressly defined, is inclusive of both levies for revenue purposes and levies for regulatory purposes. In other words license fees are commonly called taxes even though strictly speaking they may be a charge or fee rather than a tax.

The act of 1945 as it appears in § 264, Pocket Part of the Code of 1940, contains the following provision, "The license herein provided for shall be in addition to all other licenses now or hereafter provided for by law." The state takes the position that if the $200.00 levied under the 1945 act is a tax, then it should not be credited on the tax levied under the provisions of § 425 et seq., Title 51, Code of 1940, because if credited, it would not be in addition to all other licenses now or hereafter provided for by law.

Here again we must undertake to interpret the statutes despite uncertainty in some of their expressions. In putting the foregoing words in the 1945 act it is not unreasonable to consider that the legislature had in mind the provisions of § 431,

676

Title 51, Code of 1940, and intended that the license tax provided for by the act of 1945 should be a credit on the tax levied by the earlier statutes because § 431 contemplates that "any other tax" which means any additional tax must be so credited. There is another consideration to support this view which seems reasonable to us under the circumstances. The tax levied on financial institutions in § 425, Title 51, Code of 1940, is referred to in those statutes as an excise tax. While the name which the legislature may give to any money payment commanded by its statute is not necessarily controlling, it may be looked to to aid in determining the nature of the tax. These statutes show a scheme of taxation levied on the privilege of engaging in the business of banking and conducting a financial institution. Title Guarantee Loan & Trust Co. v. State, supra. In other words, the excise tax is on the business that may be carried on and does not necessarily imply a license. Casmus v. Lee, 236 Ala. 396, 183 So. 185, 118 A.L.R. 822. While an excise tax may partake of the nature of a license tax, it has a wider and more comprehensive meaning than a license tax. Carmichnel v. Southern Coal & Coke Co., 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245, 109 A.L.R. 1327; Stewart Machine Co. v. Davis, 301 U.S. 548, 57 S.Ct. 883, 81 L.Ed. 1279, 109 A.L.R. 1293. But while the tax levied under § 425 et seq., Title 51, Code of 1940, is an excise tax, it is clear that the tax levied under the 1945 act is a license tax, without which, one engaging in such business, is guilty of a misdemeanor. § 275, Title 5, Pocket Part of Code of 1940. So considered the tax levied under the 1945 act is not to be considered as an additional license tax to the tax levied under § 425 et seq., Title 51, Code of 1940, since the tax levied under these latter statutes is not so clearly a license tax within the meaning of these statutes as to deprive the taxpayer of the benefit of the credit.

The court acted correctly in overruling the demurrer to the bill of complaint.

Affirmed.

BROWN, FOSTER, and LAWSON, JJ., concur.